216 So.2d 863 (1968)
James R. PERTUIT, Plaintiff-Appellant,
v.
Gordon M. LeBLANC et al., Defendants-Appellees.
No. 11111.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1968.
Rehearing Denied January 7, 1969.
*864 Stagg, Cady & Beard, Shreveport, for appellant.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellees.
Before GLADNEY, DIXON and PRICE, JJ.
DIXON, Judge.
Klaas Koster sues to set aside a judgment rendered against him in the amount of $7,237.10. Koster's petition to annul was filed on October 10, 1967 in a suit styled "James R. Pertuit v. Gordon M. LeBlanc, et al.," No. 151,534 in the First Judicial District. There was a judgment in that cause rendered on January 5, 1967 and signed January 10, 1967, which Koster seeks to set aside.
Legal action in this case was commenced on November 15, 1961, when Pertuit sued Gordon M. LeBlanc, a partnership, and the partners, Gordon M. LeBlanc, Joseph Hegeman, and Klaas Koster, for attorney's fees. On December 1, 1961, Isaac Abramson filed an answer on behalf of Gordon M. LeBlanc, Joseph Hegeman, and Klaas Koster. On December 8, 1961, Abramson filed a request for ten days' advance notice of setting the case for trial. On December 14, 1961, Abramson filed an answer on behalf of "Gordon M. LeBlanc, a partnership composed of" LeBlanc, Hegeman, and Koster. On December 9, 1966, Pertuit, who had filed his petition in proper person, filed a "joint motion to associate attorney of record" and an order, enrolling William M. Cady as attorney of record for plaintiff Pertuit. At motion hour on December 14, 1966, the case was fixed for trial. On January 5, 1967, the date fixed for trial, the firm of Abramson, Maroun and Kaplan filed in open court a motion to withdraw as counsel, stating in the motion that "they have been unable to locate defendants to notify them of this withdrawal." The trial judge signed the order allowing the withdrawal, and proceeded with the trial of the case. Whereupon judgment was rendered in favor of plaintiff and against the partnership and the partners, for their virile share, as prayed for by the plaintiff. Judgment was read and signed on January 10, 1967.
*865 The record reflects that Pertuit subsequently sent a certified copy of his judgment to Klaas Koster. Koster, a domiciliary of the state of New York, then consulted his lawyers. After some correspondence, Pertuit sent his judgment to a firm of lawyers in New York, and attempted to make the judgment executory. Apparently because of a discrepancy in the date of the return on the citation (Suit was filed November 15; a Jefferson Parish deputy, having served Koster there, dated his return November 14), Koster succeeded in preventing the execution of the judgment in New York State. Following this, the instant petition was filed to annul the judgment of January 5, 1967.
Before this court, the issues as viewed by appellee, Koster, are as follows:
(a) Was Koster denied "procedural and substantive due process of law" by not being given the opportunity to have his day in court?
(b) Would the enforcement of the judgment granted on January 5, and filed on January 10, 1967, against Koster, irrespective of any laches or negligence, be unconscionable and inequitable?
(c) Did the trial court have personal jurisdiction over Koster?
(d) Was the original suit abandoned as to Koster under Article 561 of the Louisiana Code of Civil Procedure?
In addition, Koster filed a motion to dismiss this appeal.

Motion to Dismiss
In this motion Koster maintains that the judgment from which this appeal is taken is "in the nature of a new trial"; that there is no appeal from the granting of a new trial; and that appellant's sole remedy at this time is a new trial on the merits, after which he might appeal.
Koster's petition seeks to annul the judgment. It was not a motion for a new trial. It was a separate suit, although filed under the old number and style, as allowed by L.R.S. 13:3471(5). Koster's sole and only prayer was that, after citation and service, there be judgment against Pertuit annulling and setting aside the judgment rendered against Koster and in favor of Pertuit on January 5, 1967. The judgment rendered on April 10, 1968, as a result of that petition, granted Koster a judgment against Pertuit annulling and setting aside the judgment of which Koster had complained.
A judgment which sets aside a final judgment is itself a final judgment. Levy v. Levy et al., 178 La. 407, 151 So. 635. The judgment in this case determined the merits "in whole," and is a final judgment. C.C.P. Art. 1841. The pleadings here do not conform to those contemplated in C.C.P. Arts. 1971 through 1979 (New Trial). This is an "Action of Nullity" covered by the provisions of Title 6, Chapter 5, Section 3 of the Code of Civil Procedure (C.C.P. Arts. 2001 through 2006).
The motion to dismiss the appeal is overruled.

Personal Jurisdiction over Koster
Article 2002 of the Code of Civil Procedure provides that:
"A final judgment shall be annulled if it is rendered * * *
"(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken."
Koster contends that, since his citation was dated the day before the suit was filed, he has not been "served with process as required by law."
The return was made on the reverse side of the citation. The deputy sheriff filled in certain blanks in the printed form provided *866 for this purpose. The return is as follows:

"PERSONAL SERVICE
"Received the within citation on the 14th day of Nov. 1961 and on the 14th day of Nov. 1961, served the same on the within named Klaas Koster in the Parish of Jefferson, State of Louisiana, by handing a certified copy hereof, together with a certified copy of plaintiff's petition, to _____________________________.
 s/ Teddy J. Clement
 Deputy Sheriff"
Koster's position is that, since the deputy said November 14 instead of November 15 (the date on which the suit was actually filed in Caddo Parish), and failed to fill in the blank stating to whom the citation and copy of the petition were handed, there was no valid service, and no parol evidence may be admitted to show what actually occurred.
The deputy who made the service in Jefferson Parish testified that the date of November 14 was an error; that he served the petition and citation and made his return on the day Pertuit gave him the papers. Pertuit testified that he filed the suit in Caddo Parish on November 15, went directly to Jefferson Parish, met a deputy and accompanied him to a motel where service was made on Koster. To all this evidence Koster objected, contending that the law prohibits the introduction of parol evidence to vary the return on the citation.
C.C.P. Article 1292 provides that:
"The sheriff shall endorse on a copy of the citation or other process the date, place, and method of service and sufficient other data to show service in compliance with law. He shall sign and return the copy promptly after the service to the clerk of court who issued it. The return, when received by the clerk, shall form part of the record, and shall be considered prima facie correct. The court, at any time and upon such terms as are just, may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."
We are satisfied that the evidence of proof of service was sufficient to amend the erroneous return on the citation. It is true that in our jurisprudence the statement is made that parol evidence is inadmissible to prove service of citation. General Motors Acceptance Corporation v. Guidry, La.App., 177 So.2d 184. It is to be noted that in the General Motors case (supra) there is no return on the citation, and the trial court had admitted parol evidence to prove that the petition and citation had actually been served.
The Louisiana Code of Civil Procedure made substantial changes in the pre-existing statutory material covering the return on the citation. C.C.P. Art. 1292 now provides that the court at any time, and upon such terms as are just, may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.
This provision is new material in Louisiana law, and is practically copied from Rule 4(h) of the Federal Rules of Civil Procedure. We are satisfied that this article contemplates the correction of an error, merely clerical in nature, and that any admissible evidence is competent to accomplish the correction.
It is important to note that there is no contention in this record that Koster did not know of the suit; there is no contention that he was not actually served personally with the pleadings; there is merely the contention that since the return on the citation was defective, no parol evidence may be admitted to cure the deficiency.
*867 Koster's rights were not affected by the discrepancy in the date of service. He neither took action, nor refrained from taking action because of the failure of the return to give the name of the person to whom the citation was handed. His rights were not prejudiced by the defect in the return. To strike down a judgment on such narrow technical grounds because of previous expressions in cases would be to ignore the obvious intent of the legislature.
Article 2002 of the Louisiana Code of Civil Procedure, as a ground for annulling a judgment, couples with deficient process the absence of a general appearance by the litigant. Appellant Pertuit points to the answer filed on behalf of Koster and his alleged partners to satisfy the requirement for "an appearance," in the event the court should find deficient service. In reply, the appellee Koster contends that the pleadings were filed without his knowledge and consent by attorneys who did not represent him, whom he had not consulted, and with whom he had had no communication concerning this litigation. If there were, in fact, no partnership existing composed of Koster, Hegeman, and LeBlanc, the record supports the contentions of Koster. If, in fact, a partnership did exist, the necessity might arise to decide whether LeBlanc had the power and authority to employ counsel for the partnership and the partners. The condition of the record precludes a determination of the existence of a partnership, as will be noted later.

Abandonment
Appellee contends that appellants' suit was "abandoned" under the provisions of La.C.C.P. Art. 561:
"An action is abandoned when the parties fail to take any steps in its prosecution or defense in the trial court for a period of five years. This provision shall be operative without formal order, but on ex parte motion of any party or other interested person, the trial court shall enter a formal order or dismissal as of the date of its abandonment."
The answer to the original petition was filed on behalf of appellee Koster on December 14, 1961. On December 14, 1966, in motion hour in open court, appellee's case was fixed for trial on January 5, 1967. La.C.C.P. Art. 5059 provides as follows:
"In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday."
Clearly, the case was fixed for trial on the last day of the 5-year period, and fixing the case for trial was an actual step in the prosecution of the case. Schutzman v. Dobrowlski et al., 191 La. 791, 186 So. 338 (1939).
Two answers were filed in this case; one on December 1, 1961, purportedly on behalf of the individuals sued (LeBlanc, Hegeman, and Koster); the other answer, filed December 14, 1961, was purportedly filed on behalf of the partnership. Appellee Koster contends that, since the lawyers were not authorized to file any pleadings on his behalf, the 5-year period began to run, as to Koster, on November 15, 1961, the date appellants' suit was filed. This contention, as the one mentioned above, might also depend on the determination of the existence or not of the partnership.

Due Process
Appellee contends that he has been denied procedural and substantive due process, and has not had his "day in court." This is a fair summary of appellee's contentions, but cannot be said to be additional reason for annulling the judgment of which he complains. Our statutory provisions are designed to establish standards, *868 and in some cases, detailed provisions, for notice and hearing in an orderly proceeding. If the judgment of which Koster complains cannot be annulled under the provisions of our statutes applicable to the nullity of judgments, then the Court is powerless to invent a new ground, and call it "denial of due process."

Ill Practices
Koster further contends that, if for no other reason, the judgment rendered against him should be annulled because of the provision of the Code of Civil Procedure Article 2004: "A final judgment obtained by fraud or ill practices may be annulled."
Courts have not hesitated to afford relief against judgments when these have been granted under such circumstances that the enforcement of the judgment would be unconscionable and inequitable. St. Mary v. St. Mary, La.App., 175 So.2d 893 (1965). The comments under Code of Civil Procedure Article 2004 state that it was the intention of the redactors to overrule prior jurisprudence, and that no longer must the bad practices complained of be those of the party obtaining the judgment.
From a line of cases in Louisiana: (St. Mary v. St. Mary (supra); Bell v. Holdcraft, La.App., 196 So. 379; Nessans v. Colomes, 130 La. 375, 57 So. 1010; Sandfield Oil & Gas Co., Inc. v. Paul, 7 So.2d 725; and Tapp v. Guaranty Finance Company, Inc. et al., La.App., 158 So.2d 228), able counsel for Mr. Pertuit extracts two requirements for the application of C.C.P. Art. 2004 where no real fraud has been shown:
(1) There must be an absolutely valid defense which could have prevented the rendering of the judgment complained of, and
(2) There must have been a serious error or irregularity in procedure.
On January 5, 1967, Abramson, Maroun & Kaplan filed the following motion to withdraw as counsel:
"1. ABRAMSON, MAROUN & KAPLAN, counsel for GORDON M. LeBLANC, JOSEPH HEGEMAN and KLAAS KOSTER, defendants in this cause, herewith move the Court for permission to withdraw as counsel and to be discharged from all further responsibility in this cause. They do further show that they have been unable to locate defendants to notify them of this withdrawal.
"WHEREFORE, appearers pray that they be authorized to withdraw as counsel of record for defendants in this cause.
"I certify that a copy of this pleading has this day been handed to plaintiff and opposing counsel.
 "ABRAMSON, MAROUN
 & KAPLAN
 By Michel A. Maroun
January 4th, 1967 Attorneys"
This motion was filed in open court at the time the case was called for trial. The motion was granted by the trial judge, who then allowed the plaintiff to proceed and obtain his judgment. The motion alleges that counsel "have been unable to locate defendants to notify them of this withdrawal." No reason for withdrawal is given in the motion, and none is found in the record, until the trial of the suit to annul, on November 30, 1967. Evidence on the trial of the suit to annul does not indicate that a diligent effort was made to locate Koster. There is no evidence of telephone calls or other communications made to him at the small town of his residence to notify him that, after five years, his case was fixed for trial and his lawyers were about to withdraw.
Section 42 of the Canons of Ethics of the Louisiana State Bar Association provides:

"Section 42. Withdrawal from employment as attorney or counsel

"The right of an attorney or counsel to withdraw from employment, once assumed, *869 arises only from good cause. Even the desire or consent of the client is not always sufficient. The lawyer shall not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect. If the client insists upon an unjust or immoral course in the conduct of his case, or if he persists over the attorney's remonstrance in presenting frivolous defenses, or if he deliberately disregards an agreement or obligation as to fees or expenses, the lawyer may be warranted in withdrawing on due notice to the client, allowing him time to employ another lawyer. So also when a lawyer discovers that his client has no case and the client is determined to continue it; or even if the lawyer finds himself incapable of conducting the case effectively. Sundry other instances may arise in which withdrawal is to be justified. Upon withdrawing from a case after a retainer has been paid, the attorney shall refund such part of the retainer as has not been clearly earned." (emphasis added)
If the attorneys who purportedly represented Koster had been required to communicate with him prior to withdrawing from the case, he could have taken appropriate measures. This irregularity in procedure, if coupled with the existence of a valid defense, would compel the annulment of the judgment of January 5, 1966.
If there was, in fact, no partnership existing which included Koster, this fact would serve as a valid defense against Pertuit's claim.
Some evidence was admitted on the trial of this cause concerning the existence of a partnership. Negative testimony was adduced from Messrs. Maroun and Kaplan, partners of Mr. Abramson. They had no knowledge of the existence of a partnership. The testimony of Mr. Abramson, who actually handled the matter for his law firm, shed no light on the existence of the alleged partnership. Mr. Abramson's testimony was that he dealt only with Gordon LeBlanc, and filed the answer in the suit at Mr. LeBlanc's instruction, but that he did not communicate with Mr. Koster concerning his representation of Mr. Koster.
Pertuit relies on allegations made in suit No. 153,809 in the First Judicial District, entitled "Judd Bernard v. Gordon LeBlanc" as containing a judicial confession of the existence of a partnership. That suit was filed on April 30, 1962. On the 14th day of May, 1962, Mr. Abramson filed a pleading in that case in which he set out that, although there had been a partnership at one time between LeBlanc, Hegeman, and Koster, that the partnership had been dissolved.
There is no more evidence to indicate that Mr. Abramson actually represented Koster in suit No. 153,809 than there is in the instant suit. In No. 153,809, Mr. Abramson's client and communicant was Gordon LeBlanc. Mr. Koster did not sign the pleadings. There was no trial of the case, it having apparently expired for lack of prosecution for five years.
Mr. Pertuit testified that there was a partnership; that he gained this knowledge from the individual partners and from the operation of the business. Mr. Koster testified that he was not a partner with LeBlanc and Hegeman. Upon the objection of Mr. Pertuit's counsel, Koster was prevented from testifying to much more than conclusions of law as to the existence of the partnership.
The record as it reaches us contains no facts upon which we can conclusively determine whether or not a partnership existed between LeBlanc, Koster, and Hegeman, and whether that partnership owed the attorney's fees sought by Mr. Pertuit. Counsel for Koster attempted to develop the details concerning the business relationship among the alleged partners, but was not allowed to do so.
Before a determination can be made in this suit to annul, appellee Koster must be given an opportunity to establish that a *870 valid defense existed to the original claim which appellant Pertuit made against him. For this reason, it will be necessary to remand this case to the District Court for further proceedings to determine whether the partnership alleged actually existed. The case is remanded at the cost of the appellant.