239 So.2d 680 (1970)
Charles W. BUNCH
v.
Joseph W. FREZIER and the Hanover Insurance Company.
No. 8065.
Court of Appeal of Louisiana, First Circuit.
June 30, 1970.
*681 William Carl Roberts, of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellant.
Robert S. Cooper, Jr., Baton Rouge, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Defendant-appellant, The Hanover Insurance Company (Hanover), appeals from a judgment in favor of plaintiff, Charles W. Bunch, pursuant to an uninsured motorist clause contained in a policy issued by Hanover to Bunch's employer, Daigle Pontiac Company, Inc. (Daigle). We affirm the judgment rendered below.
At approximately 2:30 A.M., June 24, 1967, a head-on collision occurred between a northbound vehicle belonging to Daigle and being operated by plaintiff Bunch, and a southbound motor vehicle being driven by defendant Frezier. The accident happened on a straight and level stretch of Louisiana Highway 30 (Nicholson Drive Extension), a two-lane roadway, about three and one-half miles south of the Baton Rouge city limits. Bunch sued Frezier and Hanover for personal injuries and related expenses sustained and incurred in the accident. The trial court rendered judgment in favor of Bunch and against Frezier and Hanover in the sum of $6,000.00, but limited the effect of the judgment against Hanover to $5,000.00, the limits of Hanover's liability under the uninsured motorist clause in its policy issued to Daigle. Before the matter went to trial, Hanover paid Bunch the sum of $500.00 due pursuant to a medical payment provision in Daigle's policy.
Hanover filed a third party demand against Frezier for recovery of whatever amount Hanover might be held liable to Bunch under Daigle's uninsured motorist clause. Hanover also filed a third party demand against Bunch and Frezier for the sum of $2,681.82, paid Daigle for damages to its automobile pursuant to collision coverage of the vehicle. The trial court rejected Hanover's demand against Bunch but gave Hanover judgment on its third party demand against Frezier. Frezier has not appealed.
As hereinafter shown, at the moment of impact, Frezier's southbound vehicle was completely in the northbound lane. Bunch's car was partly in both lanes.
Defendant Frezier in essence testified he had no recollection whatsoever of the accident. He conceded he could have fallen alseep just before the impact as he had not slept for approximately thirty hours previously. Frezier admitted he had been drinking beer for from two to four hours prior to the collision. He stated that after leaving a tavern, he stopped at a service station on College Drive to purchase gasoline. He recalled that his lights were on when he entered the gas station but was not certain his lights were burning at the time of the accident. He also recalled leaving the gas station, proceeding to Ben Hur Road and then turning left onto Nicholson Drive. Frezier had no other knowledge of the events preceding the mishap. He acknowledged that he had no liability insurance.
Plaintiff's testimony is to the effect he was employed by Daigle as parts manager. At the time of the accident he was driving a new Pontiac furnished him by his employer. He suffered amnesia as a result of head injuries sustained in the collision. About two weeks after the accident, he recalled some of the events leading thereto. At the trial, he was able to remember the details of the accident because of a recent incident which caused him to regain his memory. Prior to the accident he had attended stock car races at Prairieville where he remained until approximately 11:45 P. M. While at the races he consumed three or four beers and two or three hot dogs. He left the races seeking a particular lounge on Nicholson Drive about which he had recently heard. After traveling south *682 on Nicholson Drive and failing to find the lounge, he turned around and proceeded in the opposite direction. Upon recovering from his amnesia, plaintiff recalled that after the accident he told the investigating officer he had swerved to miss a dog. When he regained total recall, plaintiff remembered that he suddenly observed an oncoming vehicle traveling toward him in the northbound lane without lights. He applied his brakes and swerved to the left. He stated variously that he first noticed the oncoming car when it came within the range of his lights, when it was 100 feet away, and when it was two cars lengths away. Plaintiff explained his telling the investigating officer the story of a dog in the road by noting that his wife had previously experienced a near accident involving a dog while plaintiff was a passenger in the car. He conceded relating to an insurance investigator that he was traveling sixty miles per hour and did not see the oncoming vehicle.
The accident was investigated by State Policeman Charles Lee Causey. On arriving at the scene he noted a near head-on collision between the vehicle being driven by Bunch proceeding northerly and the one operated by Frezier traveling southerly. Plaintiff's vehicle came to rest on the west side of the highway facing southeasterly. The Frezier car was found facing northerly, completely in the northbound lane. Officer Causey noted deep gouge marks in the highway surface approximately four feet inside the northbound lane and about 15 feet north of where the Frezier vehicle came to rest. Other marks on the roadway indicated the Frezier vehicle made a complete circle on the highway before coming to rest. The gouge marks noted in the northbound lane indicated to the officer that they were made by the right front of the frame of the Bunch automobile. In turn, this indicated the left wheels of Bunch's car were about three feet inside the southbound lane at the moment of impact. Finding no skid marks that night, Causey returned to the scene during daylight and observed faint skid marks left by the Bunch car just prior to the point of impact. Based on these skid marks and the fact that the Bunch car was heavily damaged above its front bumper, Causey concluded that Bunch had applied his brakes just before the impact. Causey also noted that the front wheels of Bunch's car were smashed to the left indicating that Bunch had cut sharply to his left immediately prior to the collision. Bunch conceded that he had been drinking and also related that he had swerved over the center line of the highway to avoid striking a dog.
Hanover, relying upon Cormier v. Traders & General Insurance Company, La. App., 159 So.2d 746, and Guitreau v. Otts, La.App., 119 So.2d 111, maintains the lower court erred in exonerating Bunch from negligence proximately causing the accident notwithstanding each driver was partly in the wrong lane. We find the cited authorities inapposite herein because of material factual distinctions. In the quoted cases, each vehicle was partially in the wrong lane.
Based on Officer Causey's testimony, the trial court found that Frezier's automobile was completely in Bunch's lane at the moment of impact. In this vital conclusion we concur. This finding raises the prima facie presumption that Frezier was negligent and that his negligence was the proximate cause of the accident. It is settled law that a motorist involved in an accident while on the wrong side of the highway must explain his presence there and show his freedom from negligence. Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671; Skinner v. Scott, 238 La. 868, 116 So.2d 696.
The trial court evidently concluded that Bunch's partial occupancy of the wrong lane resulted from evasive measures taken as a result of the emergency created by Frezier invading Bunch's lane of travel. It appears this finding is justified by the testimony of Officer Causey which shows *683 that Bunch applied his brakes and cut sharply to his left immediately prior to the impact. We concur in this determination which satisfactorily explains Bunch's vehicle being partially in the wrong lane of travel. The charge of contributory negligence lodged against Bunch by appellant must be established by appellant by a preponderance of evidence. Ginlee v. Helg, 261 La. 261, 203 So.2d 714.
Appellant vehemently attacks plaintiff's testimony as unworthy of belief because of the conflicting statements given by plaintiff regarding the circumstances surrounding the accident. The record establishes that plaintiff was treated by Dr. Vance G. Byars who from the outset was concerned by plaintiff's apparent amnesia as a result of injuries received in the accident. It suffices to state that Dr. Byars was of the opinion plaintiff's amnesia was genuine and that such a condition frequently accompanies injuries of the type sustained by plaintiff. We deduce from the record that it is quite probable that plaintiff's recall, as related at the trial, may not necessarily reflect precisely what occurred. Nevertheless, we see no reason to question plaintiff's veracity. We accept his narration of the circumstances as being his honest recollection of the attending circumstances considering Dr. Byars' testimony which corroborates plaintiff's amnesia. The record affirmatively shows that plaintiff was aware of the emergency created by Frezier and reacted thereto in an effort to prevent a collision. Under the circumstances, we find no error in the trial court's rejection of appellant's plea of contributory negligence on plaintiff's part. The burden of proving plaintiff's alleged contributory negligence has not been discharged by appellant by a preponderance of evidence as required by law.
Hanover's claim that the amount of the award to plaintiff under the uninsured motorist clause should be reduced by the sum of $500.00 paid plaintiff under the medical payment provision of his policy is based on the following policy provision:
Coverage U, Section III(b)
"Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:
(1) All sums paid on account of such bodily injury by or on behalf of

(i) the owner or operator of the uninsured highway vehicle." (Emphasis by the Court.)
Counsel for Hanover argues that if judgment were rendered in favor of plaintiff under the uninsured motorist clause for damages totaling $1,750.00 and medical expense aggregating $500.00 and the policy contained no medical payment provision, plaintiff could nevertheless recover the total of $2,250.00 under the policy for his bodily injury. On this basis, it is contended that the sum of $500.00 paid by Hanover to its insured prior to trial was paid on account of his bodily injuries and under the provision hereinabove set forth, is deductible from the amount paid under the uninsured motorist clause.
Contracts of insurance are to be interpreted in accord with the intent of the parties which is determined by giving the language of the agreement meaning which renders the contract practical, fair and reasonable in its entirety. Floyd v. Pilot Life Insurance Company, La.App., 135 So.2d 546.
Insurance contracts which are clear and unequivocal must be strictly enforced. Labbe v. Mt. Beacon Insurance Company, La.App., 221 So.2d 354.
Exclusionary clauses in an insurance policy are strictly interpreted. Bezue v. Hartford Accident & Indem. Co., Hartford, Conn., La.App., 224 So.2d 76.
The policy, which appears in evidence, discloses that a premium of $65.00 was charged for uninsured motorist coverage and $80.40 charged for automobile and *684 premises medical payment benefits. The medical payments clause reads as follows:
"II. EXPENSES FOR MEDICAL SERVICES COVERAGE I  AUTOMOBILE MEDICAL PAYMENTS
* * * * * *
The company will pay all reasonable medical expense incurred within one year from the date of accident
Coverage I. to or for each person who sustains bodily injury, caused by accident, while occupying any automobile which is being used by a person for whom bodily injury liability insurance is afforded above with respect to such use."
The uninsured motorist clause states:
"I. COVERAGE U  UNINSURED MOTORIST (Damages for Bodily Injury)
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

* * * * * *
We note the medical payment provision in question is not conditioned upon fault or liability of anyone. It is a separate coverage for which a specific premium was charged and paid. It provides in unambiguous language that medical expense incurred will be paid any insured who sustains accidental bodily injury while an occupant of the insured vehicle.
We likewise note that the uninsured motorist clause agrees to pay any insured who is injured through the fault of an uninsured motorist up to the limits stated in the policy. The above quoted portion of Coverage U, Section III (b) clearly states that the amount paid by virtue of the uninsured motorist clause shall be reduced by all sums paid on account of bodily injury BY OR ON BEHALF OF THE OWNER OR OPERATOR OF THE UNINSURED VEHICLE. Payment by Hanover under the medical payment clause is certainly not a payment by the uninsured motorist, Frezier. It was a payment by Hanover. Neither was it a payment on behalf of the uninsured motorist; it was a payment due by Hanover merely because plaintiff, an insured, sustained accidental injuries while occupying the insured vehicle, which injuries required medical attention. As this policy is worded, the medical pay clause provides $500.00 medical expense in the nature of benefits under an accident policy. It is operative even in the event the insured motorist himself were guilty of negligence causing the accident. It is also operative irrespective of negligence on the part of anyone. Therefore, the payment of medical expense was Hanover's obligation under the terms of the policy  it was a payment Hanover made on behalf of itself. As such, it is not deductible from the sum paid under the uninsured motorist clause of the policy.
It suffices to say that plaintiff's injuries warranted an award for pain and suffering far in excess of the sum of $5,000.00. It is also shown that plaintiff incurred medical expense considerably greater than $500.00.
We are cognizant of Morgan v. State Farm Mutual Automobile Insurance Company, La.App., 195 So.2d 648, and Connelley v. Southern Farm Bureau Casualty Co., La.App., 219 So.2d 206, wherein payments under medical pay clauses were held deductible from payments due pursuant to an uninsured motorist clause. Examination of the cited authorities discloses that they contained language different *685 from that employed in the policy issued by appellant herein. It is elementary that each such contract must be determined in the light of its own particular terms and provisions.
Appellant's claim against Bunch for $2,681.82 paid Daigle for damages to its vehicle must fall in view of the finding that Bunch was free of negligence.
The judgment of the trial court is affirmed; all costs to be paid by appellant, The Hanover Insurance Company.
Affirmed.