263 So.2d 912 (1972)
Mary A. ELLEDGE, Individually and In Her Capacity As Natural Tutrix of the Minor, Murray Jay Elledge, Plaintiff-Appellant,
v.
Earl F. WARREN et al., Defendants-Appellees.
No. 3835.
Court of Appeal of Louisiana, Third Circuit.
May 19, 1972.
Rehearing Denied June 15, 1972.
Writ Refused September 19, 1972.
*913 Richard R. Kennedy, Lafayette, for plaintiff-appellant.
McBride & Brewster, by Robert R. McBride, Lafayette, for defendants-appellees.
*914 Before FRUGE, HOOD and MILLER, JJ.
MILLER, Judge.
The trial court granted summary judgment dismissing Mary A. Elledge's claim against her insurer under the uninsured motorist coverage, enforcing the exclusion of uninsured motorist coverage when the insured is occupying an uninsured automobile owned by the named insured or a relative. We reverse. The exclusionary provision is contrary to the statute which requires uninsured motorist protection unless specifically waived.
Mary A. Elledge owned two automobiles and a Honda motorcycle. Both automobiles were insured, and uninsured motorists protection was provided for both. Under the terms of the policy, her son was an insured. The motorcycle was not insured. Mrs. Elledge's son Murray Elledge was operating the Honda motorcycle in Lafayette and had stopped for a traffic light. Two other motoristsone insured and one uninsuredcollided causing one to strike and injure Murray. In the claim for damages for personal injuries and medical expenses, plaintiff joined her insurer as party defendant under her uninsured motorist coverage, in the event the uninsured motorist was found to be the sole cause of the accident.
Mrs. Ellege's insurer, defendant State Farm Mutual Automobile Insurance Company, moved for summary judgment based on its policy exclusion relating to uninsured motorist coveragePart IV coverage U at page 8:
"EXCLUSIONS. This policy does not apply under Part IV.
"a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile, ..."
As to the applicability of the exclusionary clause to the uninsured motorcycle in this case, we note that in many instances the words of a policy are interpreted according to their general and popular use. The exclusionary clause in this case is worded in terms of automobiles other than insured automobiles, i.e., uninsured automobiles, owned by the named insured or his relatives. We accede to the proposition that in its general and popular use the word uninsured automobile would not comprehend motorcycle.
However, the rule of general and popular use construction applies only where the terms are not defined by the policy itself. "Where a policy of insurance contains a definition of any word or phrase, this definition is controlling." Hendricks v. American Employers Insurance Co., 176 So.2d 827, 830 (La.App. 2 Cir. 1965), writ refused 248 La. 415, 179 So.2d 15. Furthermore, exclusionary provisions must be read in the context of the entire policy. West v. City of Ville Platte, 237 So.2d 730 (La.App. 3 Cir. 1970).
In the case at hand the exclusion relating to automobiles owned but not insured is found in Part IV of the policy. The definition of such an uninsured automobile is found in the same section, as follows:
"... the term `uninsured automobile' shall not include:
(4) a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle ..."
In Thibodeaux v. St. Paul Mercury Insurance Company, 242 So.2d 112, (La.App. 3 Cir. 1971), this definition was held to have the following meaning:
"This specific exclusion of certain types of land motor vehicles indicates that the policy did include all land motor vehicles under its uninsured motorist provision..."
*915 The court found that the insurance company had thereby intended to include motorcycles within the concept of uninsured automobiles. We believe that although it was not so nominated, the process of reasoning which the court used in this case was that applied in Darrell v. State Fire and Casualty Company, 221 So.2d 5, 6 (Fla.App. 3 Dist. 1969):
"So when we apply the maxim `expressio unius est exclusio alterius' to the above quoted portion of the insurance policy we conclude that as defined in the policy `automobile' means all land vehicles except those specifically excluded and that therefore a motorcycle is an automobile within the meaning of the instant insurance policy."
Having determined that the definition of uninsured automobiles in the present policy includes motorcycles,[1] we read the exclusion in this context and conclude that motorcycles *916 are included within the vehicles owned but not insured to which this exclusion applies.
That such a broad definition of automobiles is warranted in interpreting the exclusion clause is borne out by the fact that in Rushing v. Allstate Insurance Co., 216 So.2d 875 (La.App. 2 Cir. 1968) the court found an identically worded exclusion applicable to a truck.
Can the insurer require its insured owner of uninsured motorist coverage to pay additional premiums when the insured owns more than one automobile in order to provide uninsured motorist coverage while its insured is occupying other vehicles "owned by the named insured or a relative"? We find it cannot.
Problems caused by the financially irresponsible and the uninsured motorist have been the subject of much study. See The Problem of the Financially Irresponsible Motorist, 24 U.Kansas City L.Rev. 82 (1955-56); The Uninsured Motorist: National and International Protection Presently Available and Comparative Problems in Substantial Similarity, 9 Buffalo L.Rev. 283-320 (1960); Public Responsibility and the Uninsured Motorist, 47 Georgetown L. J. 700, 702 (1959); Uninsured Motorist Coverage in Virginia, 47 Virginia L.Rev. 145 (1961); The Nature and Potential of the Saskatchewan Insurance Experiment, 14 Florida L.Rev. 352 (1961); Widess, A Guide to Uninsured Motorist Coverage (1969); and New Provisions for Protection from Injuries Inflicted by an Uninsured Automobile, 396 Insurance L.J. 19, 20 (1956).
By the end of 1968, forty-six states had legislation requiring insurance companies *917 to include uninsured motorist coverage (unless specifically waived) in all liability policies issued or delivered by an insurer licensed in the state, upon any motor vehicle principally used or garaged in the State. Widess, supra, § 111, p. 15. Louisiana is one. LSA-R.S. 22:1406, subd. D (1) provides:
"D.(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage."
In the light of the history of this legislation as reported by the cited authorities, we find it appropriate to review our appreciation of our own statute.
There existed in our society a situation whereby financially irresponsible people could acquire and drive vehicles capable of great damage. Because of their financial irresponsibility and lack of insurance, they were unable to respond to their victim in damages under LSA-C.C. Art. 2315. This created a class of injured people in our state who were left without recourse and who, without some form of relief, might become wards of the state. Insurance plans (such as the financial responsibility law) oriented toward coercing motorists to purchase insurance or removing them from the highways if they did not, proved ineffective. Other plans had to be developed.
In an effort to forestall plans distasteful to itself, the insurance industry set forth a plan of compensation for the innocent victims of the uninsured motorists. In surveying the problem, it became evident to our legislature that the source of the harm was a danger peculiar to the use of the automobile and the industry most capable and most interested in resolving the problem was the one most closely related thereto in terms of economics and self interestthe automobile insurers. Therefore, our legislature seized upon the solution set forth by the insurance industry and made the offering of uninsured motorist protection a mandatory condition precedent before the companies could conduct business in Louisiana.
The evil and the injuries existed. By the terms of our statute, whenever evil perpetuates itself upon a policy holder availing himself of uninsured motorist coverage (or insureds under his policy), he is to be compensated for his injuries. In Booth v. Freeman's Fund Insurance Company, 253 La. 521, 218 So.2d 580, 583 (1969), our Supreme Court concluded "that the intent of our uninsured motorist statute and the policy endorsement issued thereunder is to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists." See also Valdez v. Federal Mutual Insurance Company, 272 Cal.App.2d 223, 77 Cal.Rptr. 411, 413 (1969). "... Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own."
The nature of the premium charged for this protection gives insight into the coverage afforded. The rate is a flat one and coverage is available to all persons at the same rate. The rate is unrelated to risks. By terms of the policy, the policy holder and members of his family are covered, irrespective of the number, ages or sex of *918 those in the family. The insured family members are covered while guest passengers of an uninsured motorist who injures them. Thibodeaux v. St. Paul Mercury Ins. Co., 242 So.2d 112 (La.App. 3 Cir. 1971). It would be impossible to effectively gauge the frequency of the insured's travel as a guest of others, as well as these other's driving ability, age, sex, etc.
This points to the fact that the intent of the coverage is to protect an insured at all times. He is not to be protected only when in his own car or with a member of his family. If he were, his frequency and degree of exposure to uninsured motorists could possibly be gauged and rates regulated accordingly. Once this definable scope of risks has been enlarged and extended to cover cases, at a flat rate, when the insured is a guest passenger of the uninsured motorist, it follows that the intent of the coverage is to protect the insured at all times against the generalized risk of damages at the hands of the uninsured motorists and not to limit coverage to certain situations or to a certain degree of risk of exposure to the uninsured motorists.
LSA-R.S. 22:1406, subd. D(1) does not allow the exclusion inserted by the insurer. This statute in effect becomes a part of every policy of insurance to which it is applicable, as if it was written in the policy itself. It follows that any policy provision which narrows the coverage mandated by the statute will not be enforced. This same result was reached with a similar California statute and a similar policy exclusion in Aetna Insurance Company v. Hurst, 3 Cal.App.3d 252, 83 Cal.Rptr. 156, 157 (1969).
There is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer. The uninsured motorists protection covers the insured and the family members while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch. See Travelers Indemnity Company v. Powell, 206 So.2d 244, 246 (Fla.Dist.Ct. of App. 1st Dist. 1968) "... the exclusion clause here (identical to the one before us) is an invalid restriction because it is not the intent of the statute to limit coverage to an insured by specifying his location or the particular vehicle he is occupying at the time of injury. The statute states its purpose thusly: `... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ...'"
It is an injury caused by this evil peculiar to automobiles, the uninsured motorist, that the insurance company has agreed to compensate the insured for, and his position at the time of the injury is irrelevant as long as an uninsured motorist has caused his injury. "This so-called uninsured protection is limited personal accident insurance ..." Motorists Mutual Insurance Company v. Bittler, 14 Ohio Misc. 23, 235 N.E.2d 745, 750-751 (1968).
The only relation that the insured must have to automobiles at the time of the accident is that he be injured by an automobile driven by an uninsured motorist. Quick v. Michigan Millers Mutual Insurance Co., 112 Ill.App.2d 314, 250 N.E.2d 819 (1969); Matwijko v. Walter Yolandy Lbr. Bldrs. Sup. & F. Corp., 16 A.D.2d 1024, 230 N.Y.S.2d 77 (1962); Lopez v. State Farm Fire & Casualty Company, 250 Cal.App.2d 210, 58 Cal.Rptr. 243 (1967); Gulf American Fire & Casualty Company v. McNeal, 115 Ga.App. 286, 154 S.E.2d 411, 416 (1967).
The purpose of the statute is to protect completely, those willing to accept its protection, from all harm, whatever their statuspassenger, driver, pedestrianat the time of injury, produced by uninsured motorists. The only restrictions are that the plaintiff must be an insured, the defendant motorist uninsured, and that *919 plaintiff be legally entitled to recover. We will not enlarge upon these qualifications and restrict the coverage of such a socially desirable policy by allowing insurance companies to pursue alleged "business interests."
In the present case, Murray Elledge is covered while riding in either of Mrs. Elledge's insured automobiles or while riding his bicycle or walking along the street. Since coverage is not predicated upon the degree or number of exposures to the risk of harm from uninsured motorists, the coverage is a blanket 100% coverage against injuries from uninsured motorists. The argument that the insurer should be compensated for additional risk fails. The payment of the flat rate invokes 100% protection against the designated evil. Payment of another flat rate does not increase the coverage. Such added payments where the policy owner owns additional automobiles, results in the insured paying twice or more times for identical coverage afforded other insureds with only one car. This is distinguished from the situation under collision and liability insurance where an insurer's liability and resultant rates are directly related to the limited types of risks it assumes and its insured's frequency of their encounter.
Further insight into the illogical nature of defendant's pursuit of this "business interest" can be had by examination of the exemption of coverage in the defendant's policy relating to an insured's presence in or injury by a relative's uninsured automobile. Apart from the reasons already discussed, the provision is improper in that coverage of an insured, who has paid for the coverage, is restricted on no better premise than the "business interest" his insurer has in securing a policy from his relativea matter over which the insured may have no control.
An insurance company may not create irrational and illusory "business interests" and interpose them as a bar to the comprehensive coverage required by our statute.
The exclusionary provision is contrary to the statute and is void. The summary judgment is reversed and the case remanded. Costs of this appeal are assessed to defendant-appellee.
Reversed and remanded.
HOOD, J., concurs and assigns written reasons.
HOOD, Judge (concurring).
I agree with the result reached by my colleagues in the majority opinion, but I do not agree with the reasons which they assign for reaching that result.
The principal issue presented in this case is whether plaintiff's son is excluded from coverage under Part IV (the uninsured motorist provision) of the policy, because he was riding on an uninsured motorcycle owned by plaintiff, the named insured, when he was injured. The exclusionary clause in that part of the policy provides:
"Exclusions. This policy does not apply under Part IV:
"(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile." (Emphasis added).
Plaintiff's son was not "occupying an automobile" at the time he sustained the injury. It is true that he was riding on a motorcycle at that time, but I feel that a "motorcycle" is not an "automobile," as that term is used in the policy, and that the exclusionary clause thus does not apply in this case. Plaintiff's son is not excluded from coverage. He is an insured under the policy, and I agree that the judgment appealed from should be reversed for that reason.
The majority, however, has held that a "motorcycle" is an "automobile," within *920 the meaning of this exclusionary clause. I disagree. The jurisprudence of this state has been settled that the term "automobile," as used in an insurance policy, does not include a "motorcycle." Laporte v. North American Acc. Ins. Co., 161 La. 933, 109 So. 767 (1926); Labove v. Traders and General Insurance Company, 219 So.2d 614 (La.App. 3 Cir. 1969); Guillory v. Deshotel, 251 So.2d 91 (La.App. 3 Cir. 1971). See also 1 A Appleman's Insurance Law and Practice, Sec. 513, pp. 398, 402; 12 Couch on Insurance 2d, Section 45:170, p. 226 (1964); Long, The Law of Liability Insurance, §§ 4.01-4.02 (1971).
In Laporte v. North American Acc. Ins. Co., supra, our Supreme Court held that a motorcycle is not a "motor driven car," as that term was used in the insurance policy involved there. In Labove v. Traders & General Insurance Company, supra, we said:
"In the ordinary use of language in America, the word `automobile' refers to a motor-driven car with a body and having more than two wheels for support as protection to the driver against accidents; whereas the word `motorcycle' indicates a motor vehicle driven on two wheels. Laporte v. North American Acc. Ins. Co., 161 La. 933, 109 So. 767, 48 A.L.R. 1086. Having regard to this ordinary meaning of the terms, as well as to the intended function of automobile liability policies and the scope of the risks intended to be covered, the courts have consistently held that motorcycles are not considered automobiles for purposes of coverage by automobile liability policies. 1 A Appleman's Insurance Law and Practice, Section 573, page 402." (Emphasis added).
And, we stated in Guillory v. Deshotel, supra, that:
"We held there (Labove v. Traders & General Insurance Company, supra) that the word `automobile,' as generally and popularly used, refers to a motor driven car with a body and having more than two wheels for support as protection to the driver against accidents. We concluded that the term, `non-owned automobile,' as used in the policy involved there, did not include a motorcycle. We think the ruling in that case should be applied here." (Emphasis added).
The majority cites Thibodeaux v. St. Paul Mercury Insurance Company, 242 So.2d 112 (La.App. 3 Cir. 1970), as authority for its holding that the term "occupying an automobile," as used in the above quoted exclusionary clause, included "riding on a motorcycle." I do not interpret Thibodeaux as so holding. There, plaintiff was riding on the back of a motorcycle which collided with an automobile. Plaintiff's father owned an automobile on which he carried liability insurance, with uninsured motorist coverage. The motorcycle was owned by a relative of plaintiff's father, and it was uninsured. Plaintiff, who was a minor living with his father at the time, sued his father's liability insurer under the uninsured motorist coverage, alleging negligence on the part of the operator of the uninsured motorcycle. The policy provided uninsured motorist coverage for damages arising out of the use of an "uninsured automobile." The uninsured motorist statute, however, does not use the word "automobile." It requires that uninsured motorist protection be provided against the operators of "uninsured motor vehicles." LSA-R.S. 22:1406, subd. D(1). We held that since the policy did not conform to the statute, the statute controlled, and that despite the language used in the policy the uninsured motorist coverage would be construed as providing protection against "uninsured motor vehicles." We found that a "motorcycle" is included in the term "motor vehicle," as that term is used in the statute. The holding in Thibodeaux is consistent with the Labove and Laporte cases, and with Guillory v. Deshotel, supra.
In the latter part of the Thibodeaux opinion we included some language which has been quoted by the majority as authority for its holding. That language was not *921 necessary in deciding the case, and I do not interpret it as supporting the majority's holding here. In Thibodeaux we specifically noted that our holding with reference to the definition of "motorcycle" was in accord with the Laporte case. And, in Guillory v. Deshotel, supra, we stated:
"In Thibodeaux, the issue was whether the uninsured motorist provision of the policy should be construed to include a motorcycle. We held that it should, but we based that holding on language used in LSA-R.S. 22:1406(D) (1) which related to uninsured motorist coverage. In arriving at that conclusion, we specifically referred to the Labove case, and we distinguished it from our holding in Thibodeaux."
I think the cited jurisprudence establishes that a "motorcycle" is not to be considered as an "automobile," as that term is used in insurance policies.
Even if we disregard the established jurisprudence as to this issue, I think the rules applicable to the construction of insurance contracts compels our court to hold that plaintiff's son is not excluded from coverage.
A contract of insurance, like any other contract is the law between the parties. LSA-C.C. art. 1901; Vidrine v. Southern Farm Bureau Casualty Insurance Company, 247 So.2d 660 (La.App. 3 Cir. 1971); Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238 (1965).
The rules established for the construction of written instruments apply to contracts of insurance. Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646 (1965); Hemel v. State Farm Mutual Automobile Insurance Company, 211 La. 95, 29 So.2d 483 (1947). Courts must give legal effect to the provisions of a policy of insurance according to the true intent of the parties, and that intent should be determined by a reading of the policy, when the words used in it are clear and unambiguous and lead to no absurd consequences. LSA-C.C. arts. 1901, 1945; Vidrine v. Southern Farm Bureau Casualty Insurance Company, supra; Bunch v. Frezier, 239 So.2d 680 (La.App. 1 Cir. 1970).
The words used in a contract of insurance are to be understood in the common and usual signification, without attending so much to grammatical rules as to general and popular use. LSA-C.C. art. 1946; Taylor v. State Farm Mutual Automobile Insurance Company, supra; Bezue v. Hartford Accident and Indemnity (1969); Harmon v. Lumbermens Mutual Casualty Company, supra.
Exclusionary clauses are strictly construed. Limitations or exceptions to the coverage of a policy must be clearly expressed, and where there is any doubt as to coverage, such doubt should be construed unfavorably to the insurer. Graham v. Maryland Casualty Company, 230 So.2d 264 (La.App. 1 Cir. 1969); Wilks v. Allstate Insurance Company, 195 So.2d 390 (La.App. 3 Cir. 1967); Bunch v. Frezier, supra; Bezue v. Hartford Accident and Indemnity Company, Hartford, Connecticut, supra; Hammond v. National Life & Accident Insurance Company, 243 So.2d 902 (La.App. 3 Cir. 1971). Any ambiguity in the language of a policy of insurance must be construed favorably to the insured and against the insurer. Hammond v. National Life & Accident Insurance Company, supra; Bezue v. Hartford Accident and Indemnity Company, Hartford, Connecticut, supra.
Under these established rules, it seems to me that we must hold that the exclusionary clause does not apply. The common and usual significance of the word "automobile" does not include "motorcycle." At best, my colleagues must concede that the word "automobile" is somewhat ambiguous. Does it or does it not include a motorcycle? This ambiguity must be resolved in favor of the insured and against the insurer. Under the above mentioned rules, it *922 should be resolved by holding that the exclusionary clause does not apply.
The majority also has held that the entire exclusionary clause must be written out of the policy as being in violation of LSA-R.S. 22:1406, subd. D(1). I disagree. My feeling, of course, is that this question should not have been considered since the exclusionary clause does not apply in this case. It was considered by the majority, however, and since I disagree I feel compelled to discuss it here.
In my opinion, the jurisprudence of this state has been established to the effect that an exclusionary clause, such as the one being considered here, is valid. See Spencer v. Traders & General Ins. Co., 171 So. 2d 723 (La.App. 3 Cir. 1965); and Rushing v. Allstate Ins. Co., 216 So.2d 875 (La.App. 1 Cir. 1968).
In Rushing v. Allstate Ins. Co., supra, where an issue identical to the one being considered here was presented, our brothers of the First Circuit Court of Appeal said:
Neither do we find that plaintiff Rushing has coverage. Under the provisions of R.S. 22:1406(D) uninsured motorists protection is extended only to those who are insured by automobile liability insurance. When Rushing occupied an owned motor vehicle, not insured, he was no longer protected by the Allstate policy which covered his other car. We can see nothing in the statute which requires an insurer to extend uninsured motorist protection under one policy to one who has elected not to insure another vehicle owned by him, so long as he occupies that vehicle. The exclusionary clause relied on by defendant is reasonable and not in violation of R.S. 22:1406(D).
The holding of the majority in the instant suit also is contrary to decisions rendered by courts of many other states. See National Union Indemnity Company v. Hodges, 238 So.2d 673 (Fla.App. 3rd Dist. 1970); Reserve Insurance Company v. Staats, 9 Ariz.App. 410, 453 P.2d 239 (1969); Fletcher v. State Security Insurance Company, 114 Ill.App.2d 91, 254 N.E. 2d 650 (Ill.App. 2nd Dist. 1969); Shipley v. American Standard Insurance Company of Wisconsin, 183 Neb. 109, 158 N.W.2d 238 (Sup.Ct. Nebraska 1968); Smitke v. Travelers Indemnity Company, 264 Minn. 212, 118 N.W.2d 217 (1962).
Aside from the fact that the majority opinion is contrary to what I believe is the established jurisprudence of this state and the great weight of authority in this country, I think there are sound reasons for holding the exclusionary clause valid. There is nothing in our uninsured motorist statute, for instance, which requires that a policy provide uninsured motorist coverage for a relative of the named insured. The policy thus would not have been in violation of the statute if it had excluded plaintiff's son completely from coverage. Also, LSA-R.S. 22:1406, subd. D(1) requires only that uninsured motorist coverage be supplied "under provisions filed with and approved by the Commissioner of Insurance." I assume that the exclusionary clause in the policy at issue here was filed with and approved by the Commissioner of Insurance.
In view of the established jurisprudence and the additional reasons assigned here, I cannot agree that the above quoted exclusionary clause is invalid, as being in violation of LSA-R.S. 22:1406, subd. D(1). I feel that that exclusionary clause is not applicable, and that the decision of the trial court should be reversed solely on that ground.
For these reasons, I respectfully concur in the result reached by the majority.

ON APPLICATION FOR REHEARING
MILLER, Judge.
State Farm Mutual Automobile Insurance Company's application for rehearing is denied. *923 Two recent Louisiana Supreme Court cases support our decision. Deane v. McGee, La., 260 So.2d 669 (1972) and Graham v. American Casualty Co., of Reading, Pa., La., 259 So.2d 22 (1972).
In Graham a plaintiff recovered under three uninsured motorists provisions in three different policiesone owned by the plaintiff and two by her father. In discussing LSA-R.S. 22:1406(D) the court stated:
"Although the statute quoted requires uninsured motorist protection and sets forth the minimum coverage the policies must provide, it does not prohibit or prevent an insurer from offering more than the minimum coverage specified. Thus there is no impediment to an injured party recovering more than the statutory minimum under an uninsured motorist endorsement. Nor does the law prevent an injured insured under uninsured motorist coverage from recovering the minimum from more than one insurer if the damage sustained warrants such a recovery. What the law does require is that each policy issued provide not less than the minimum $5,000 coverage. Proration does not take place when the damage claimed exceeds the sum of the policies under which the claimant is entitled to recover benefits under the uninsured motorist protection.
Any effort to reduce the mandatory minimum coverage of each policy by `pro rata' clause cannot be given effect by the courts." p. 24-25.
In the Deane case, the court clarified this holding stating:
"By this decision we do not mean to imply that an insured may `pyramid' or `stack' coverages under separate automobile liability insurance policies so as to recover more than his actual bodily injury loss or damage. On the other hand, if his loss is under the limits of a policy covering him, and he is covered by more than one automobile liability policy equally responsible for his loss, or if his loss in an automobile liability covered accident is more than the limit of one policy, but less than the sum of the limits of multiple policies protecting him, then, in such situations, the `pro rata' provision of the `other insurance' clause would permit proration among the insurers."
The plaintiff in Graham was awarded $25,000.00 and was allowed to recover $15,000.00 the maximum coverage from all three separate $5,000.00 uninsured motorists coverages.
The application for rehearing before us attacks our holding because it renders the uninsured motorists coverage all inclusive with the purchase of one policy on one automobile. The application stated that had the legislature intended this result it would have said so, but instead LSA-R.S. 22:1406(D) (1) required that every policy provide such coverage. What the application confuses and what is made clear by the Graham and Deane cases, and by our opinion, is the difference between scope of coverage and amount of coverage.
We hold in our original opinion that once an insured has taken uninsured motorist protection in one policy, he has a limited personal insurance policy extending coverage for $5,000.00. If he is hurt anywhere at all by an uninsured motorist, he is covered up to this $5,000.00 limit, i.e. $5,000.00 coverage follows him anywhere. According to Graham, this theory is correct. The $5,000.00 coverage on car A follows an insured when he is injured in car B when he also has $5,000.00 coverage under a policy issued on car B and the insured has a total of $10,000.00 from which to recover for his injuries. Therefore the coverage under the policy issued on car A is all inclusive and does extend to cover injuries occurring in car B.
The application for rehearing intimates that the legislature intended to limit recovery to $5,000.00 and that a premium for uninsured motorist protection had to be paid in relation to each car in order for this *924 $5,000.00 coverage to apply to injuries occurring therein. The Graham case makes it plain that this is not so and that the purpose behind the extra payment is not extra scope for a maximum coverage of $5,000.00 but an extra amount of coverage. The initial premium on car A carries this initial $5,000.00 coverage scopewise over to help indemnify accidents occurring in car B.
Now the insurer would have us believe that if car B has "no insurance" then this delimits the scope of application of the $5,000.00 coverage in policy A. Why? If "no insurance" refers to the basic liability policy then the only reason that the insurer could offer for the denial of the scope of policy A coverage would be the business interest in coercing the insured to buy an extra liability policy with them. We do not believe that it was the intent of the legislature to condone such a self-interest oriented manipulation of LSA-R.S. 22:1406 (D). If "no insurance" refers to a situation where car B has liability insurance but not with the company insuring car A then this is prohibited by the holding in Graham at 259 So.2d 22, 25:
"Nor does the law prevent an injured insured under uninsured motorist coverage from recovering the minimum from more than one insurer if the damage sustained warrants such a recovery."
Lastly, if "no insurance" refers to a situation where there is liability insurance on car B (with the same company that insures car A with liability and uninsured motorist protection) but the insured has refused to pay for uninsured motorist coverage on car B, this is equally unacceptable. Here the only justification that the insurer could offer for the exclusion would be that the scope of policy A's coverage should be restricted because the insured could only recover one $5,000.00 amount and the insurance company should not be forced to assume this extra risk of having to pay this $5,000.00 without being paid an additional premium. In this situation the insurer would be alleging that the added premium was paid to reimburse him for assuming this additional risk. The Graham case points out that the purpose behind the payment of the extra premium is the acquisition of an additional amount of coverage, not additional scope.
Policy A's coverage to accidents in car B is already extended to car B on the basis of the premiums paid in policy Aadditional premiums are necessary only to gain the additional monetary coverage of an extra $5,000.00.
We find no support for the applicability of the exclusionary clause as written.
NOTES
[1] In Labove v. Traders & General Insurance Company, 219 So.2d 614 (La.App. 3 Cir. 1969), we held that, under those particular facts, a motorcycle was not encompassed in the policy definition of owned automobiles. However, there are significant factors which distinguish Labove from our case. Note the following language at 616.

"Having regard to (1) this ordinary meaning of the terms, as well as to (2) the intended function of automobile liability policies and (3) the scope of the risks intended to be covered, the courts have consistently held that motorcycles are not considered automobiles (4) for purposes of coverage by automobile liability policies." (Emphasis and enumeration added.)
Of equal significance is the language found in Thibodeaux v. St. Paul Mercury Insurance Company, 242 So.2d 112, 114 (La.App. 3 Cir. 1971).
"Admittedly in Labove v. Traders & General Insurance Co., 219 So.2d 614 (La.App. 3 Cir. 1969), we said that a motorcycle was not an automobile but that case arose under a `Non Owned Automobile' provision of a policy and we were not called upon to decide whether a motorcycle was an automobile under any uninsured motorist protection clause." (Emphasis added.)
The turning point in Labove is that it dealt strictly with the liability provisions of an automobile insurance policy and not with provisions relating to uninsured motorist protection or exclusion clauses. The turning point in Thibodeaux is that we were dealing with uninsured motorist protection.
Note the reasoning process in Labove. We considered the intended function of liability provisions, scope of the risks intended to be covered, and the purpose of such provisions in order the determine whether motorcycles were encompassed within the word automobile. We also resorted extensively to the definition of this term as provided for in the policy and finding this unacceptable, we resorted to the "ordinary meaning of the terms." (See Hendricks v. American Employers Insurance Co., supra, for the proposition that "ordinary meanings" give way to definitions in the policy.)
Applying this same reasoning process to the uninsured motorist clauses we find (as pointed out later with reference sources to follow) that the function and purposes of uninsured motorist provisions is to protect an insured completely and at all times from all injury perpetrated upon him by a person operating all types of motor vehicles for which there is available proper insurance. The risk covered, of course, is singularany injury at the hands of such uninsured vehicle. Therefore it is initially evident that the breadth of coverage here is larger than in liability provisions. Likewise, it is only fair to conclude that the breadth of exclusion is the same.
In Thibodeaux, this court determined that uninsured motorist coverage clauses covered all injuries caused by all uninsured motor vehicles and that however written such clauses would have to comport with the statutory mandate (LSA-R.S. 22:1406, subd. D(1)). We thereby (however irrelevant some may believe it was to the decision) served notice on all insureds and insurers that the word "automobile" as used in uninsured motorist protection complied with the statute. The court took a definition offered in the policy and construed it to have a certain meaning. The process of construction of the definition was not ordinary usage which, as shown before is improper, but rather, due to the definition being couched in exclusionary terminology, the court used the "expressio uninus est exclusio alterius" method.
With the definition of uninsured automobile construed as including motorcycle, consideration should be given to what was meant by the reference to owned but not insured automobiles found in the exclusion before us. Both the definition and the clause appear in the same Part of the policy and when we construe the exclusionary clause in the context of the policy (See West v. City of Ville Platte, supra) we are left with no other conclusion than that the uninsured automobiles phraseology found in the exclusionary clause should be read in light of the definition of such "automobiles" found in the same Part. Therefore, when the policy says injury by uninsured automobiles owned by third persons is covered while injury by uninsured automobiles owned by the insured or relatives is notthe same definition applies to both provisions and both provisions thereby have the same breadth. That is to say, taking all types of vehicles used on public roads, if the insured has no control over the insurance, he is covered. But if he has control over their insurance and they are uninsured, he is excluded from coverage. This is especially true when we consider that several courts (Spencer v. Traders & General Insurance Company, 171 So.2d 723 [La.App. 3 Cir. 1965]; Rushing v. Allstate Insurance Co., 216 So.2d 865 [La.App. 1 Cir. 1968]) have, in effect, found the purpose of the exclusion to be to perpetuate the "business interest" an insurer has in not paying for injuries caused by vehicles which the insured could have insured with the insurer, but did not. The "pay for what you get" principle there applied does not seem to allow for construction of an intent upon the part of the insurer to assume coverage of several types of vehicles which the insured chose not to insure. The use of the concept of uninsured automobiles does infer such an intent in light of the contextually required application of the policy definition thereof. This is even clearer in light of the fact that, as to uninsured motorist provisions, this court previously, in Thibodeaux, led insurers to believe that the use of the concept would carry this broad comprehensive meaning.
That it led not only insurers but insureds to so believe is evidenced by the fact that all but one paragraph of plaintiff's brief was devoted to the proposition that though applicable to the facts at hand, the exclusion was void.
When words or concepts are defined, then equity and justice require that this definition be applied with equal force to those words or concepts wherever they appear.
This court has previously gleaned the intention of the definition of uninsured automobiles to include motorcycles and has applied this definition to the coverage portion of uninsured automobile insurance. The jurisprudential command of contextual construction requires that this comprehensive definition be applied to the exclusion clauses. To do otherwise would be taking a giant step backward into the judicial gap of hypertechnical credibility.