HOOD, Judge.
This is a suit for damages arising out of a motor vehicle collision. It was instituted by Joe Calhoun, Jr., individually and in behalf of his minor son, and by his wife, Mrs. Josephine D. Calhoun. Defendants are Earl H. Nugent and his insurer, Farm Bureau Insurance Company. Defendants answered denying liability, and they reconvened seeking to recover damages from Joe Calhoun, Jr.
The trial court rendered judgment in favor of defendants, rejecting plaintiffs’ demands, and condemning Calhoun to pay to defendants the damages claimed by the latter in their reconventional demands. Plaintiffs have appealed.
The sole issue presented is one of fact, that is, whether the collision occurred in plaintiff Calhoun’s lane of traffic or in defendant Nugent’s lane.
The accident occurred at about 4:30 P.M. on May 7, 1972, on a narrow, winding blacktop road in Grant Parish, Louisiana. It was raining at the time the cars collided, and the road was wet. Visibility was good, but the collision occurred at or near a curve in a heavily wooded area, and the circumstances were such that the driver of a vehicle approaching that curve from either direction could not see another vehicle approaching from the opposite direction *211 until the two vehicles reached points relatively close to each other.
Plaintiff Calhoun was driving his Volkswagen north or northwest on that road, with his wife and IS year old son riding with him as passengers. He approached and began negotiating the above mentioned curve, which required him to turn to his left or to the west, and as he was making that maneuver he met a Chevrolet automobile being driven by defendant Nugent, traveling east on the same highway. The cars collided in the curve, or at a point at or near the west end of it, the left front part of the Chevrolet striking the left front part of the Volkswagen.
Calhoun was traveling uphill as he negotiated the curve. He testified that the vehicle he was driving was completely in its right or proper lane of traffic when the collision occurred, and that the Nugent car crossed the center of the road and was partially in the north, or in Calhoun’s, lane of traffic when the automobiles collided. His testimony to that effect is supported by that of his wife and son. It also is supported by the testimony of three other witnesses who arrived at the scene shortly after the collision occurred, although they did not see the accident. All three of them stated that within a few minutes after the collision defendant Nugent made a statement to the effect that the accident' was his fault because he had gotten over too far to his left. One of those three witnesses testified that he saw debris on the road, and that it was “along over on Mr. Calhoun’s side of the road.” The other two witnesses saw no debris on the highway at the scene of the accident.
Defendant Nugent testified that his vehicle was completely in his right or proper lane of traffic when the accident occurred, that the Calhoun vehicle was “holding the inside of the road coming down about the center of the road,” and that the point of impact was in Nugent’s lane of traffic. His testimony in those respects was supported by that of a state trooper and of two deputy sheriffs of Grant Parish, all of whom arrived at the scene of the accident shortly after it occurred, and two of whom, at least, conducted investigations of the accident. All three of these witnesses testified that they found a “gouge mark” several feet long on the highway, extending from a point in Nugent’s lane of traffic to the place where the Nugent car came to rest after the accident. The location of this gouge mark convinced the investigating officers, and it apparently was an important factor in convincing the trial judge, that the vehicles collided in Nu-gent’s lane of traffic.
The evidence shows that a part of the Chevrolet known as an “A-frame,” and located just inside the left front wheel of the car, broke as a result of the accident, and that that part of the car dropped to the surface of the road and made the gouge mark referred to by the above mentioned witnesses. The A-frame was nine and one-half inches from the left side of the body of the car. The gouge mark began at a point about 28 inches south or west of the center of the highway, in Nugent’s lane of traffic, and it continued from that point across the middle of the highway, into Calhoun’s lane of traffic, to the place where the broken A-frame of Nugent’s car came to rest after the accident.
Plaintiffs do not question the fact that the gouge mark was made by the broken A-frame of the Nugent car, and that it began in Nugent’s lane of traffic. They point out, however, that the center line of the road had not been marked, and they question the accuracy of the state trooper’s measurements in locating the center of that road. They also point out that the front bumper of the Nugent car extended a substantial distance in front of this A-frame, being the distance from the center of the left front wheel to the front part of the front bumper. They contend that immediately before the cars collided Nugent turned sharply to his left to avoid striking a hole in the shoulder near the edge of his lane of traffic, that his car then began *212 skidding at an angle on the road, facing to its left toward the Calhoun lane of traffic, and that it was skidding in that manner when it struck the Volkswagen. Plaintiffs argue that the fact that the Nugent automobile was traveling at an angle explains why the A-frame of the car was in Nu-gent’s lane of traffic, while the left front part of the car was in Calhoun’s lane.
A number of photographs of the scene were taken within an hour or two after the cars collided by the state trooper who investigated the accident. Those photographs include close up views of the two involved automobiles, while they were at the places where they came to rest after the collision, and of the road at that point. The trial judge found, and we agree, that these pictures do not show any debris on the road at the scene of the accident. The photographs show a hole in the shoulder of the road, several inches deep, at the edge of the blacktopped strip, a few feet west of the point where the cars came to rest. They do not show any skid marks or tire tracks in the highway or on the west or south shoulder of the road in that area, and there is nothing in the evidence which tends to show that any part of the Nugent car traveled or skidded onto that shoulder.
All parties recognize the established principle of law that when a headon collision occurs in one of two traffic lanes, there is a presumption that the driver who was in the wrong lane of traffic at that time was negligent. Kierum v. Stonewall Insurance Co., 247 So.2d 166 (La.App. 3 Cir. 1971); Bunch v. Frezier, 239 So.2d 680 (La.App. 1 Cir. 1970).
The trial judge concluded that the collision occurred in Nugent’s lane of traffic, and that the accident was caused by the negligence of Calhoun in crossing the center of the road in front of the oncoming Nugent vehicle. We have concluded that the evidence supports that finding.
The trial judge apparently accepted the testimony of defendant Nugent as to the manner in which the accident occurred. The testimony of the two drivers was conflicting, and we cannot say that the trier of fact erred in accepting the testimony of one over that of the other.
Aside from the determination as to credibility of the witnesses made by the trial court, we believe that the physical evidence supports Nugent’s version as to how the collision occurred. In order for the left front part of Nugent’s car to have been in Calhoun’s lane of traffic, while the A-frame of the same vehicle was 28 inches on Nugent’s side of the measured center line of the road, it is apparent that the Nu-gent automobile would have had to have been turned at a substantial angle to its left when the cars collided. The photographs show that the left front end of the Nugent car was struck, and we believe it is unlikely that that part of the car would have been struck if that vehicle had been skidding at the angle contended by plaintiffs. The evidence shows, also, that the blacktopped strip was only 18 feet wide at the part where the accident occurred. That fact and the photographs which are in evidence convince us that if the Nugent car had been skidding at an angle, as contended by plaintiffs, at least the right rear wheel of that car would have had to travel or skid on the west or south shoulder of the highway. The evidence does not show any tire or skid marks on that shoulder. We find, therefore, that the Nugent car was not skidding or traveling at an angle, as contended by plaintiffs, and that that vehicle was entirely in its proper lane of traffic when the accident occurred.
Since the Calhoun car was in the wrong lane of traffic when the collision occurred, there is a presumption that the driver of that vehicle was negligent. No attempt has been made to justify Calhoun’s actions in leaving his proper lane of traffic and entering the east or south bound lane in front of the oncoming Nugent car. We agree with the trial judge, therefore, that Calhoun’s negligence in entering the wrong lane of traffic was the sole proximate cause of the accident.
*213 Our conclusion is that there was no error in the judgment of the trial court which condemns Calhoun to pay to Nugent and his insurer, plaintiffs in reconvention, the damages sustained by the latter as a result of this accident.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.