311 So.2d 223 (1975)
Robert J. HEBERT
v.
Paul R. GREEN et al.
No. 55354.
Supreme Court of Louisiana.
March 31, 1975.
*225 Charles J. LeBlanc, Thibodaux, for plaintiff-applicant in No. 55354.
L. Albert Forrest, Roy & Forrest, Jack B. Wise, Caillouet & Wise, Thibodaux, for defendants-respondents in No. 55354.
CALOGERO, Justice.
A three car accident gave rise to the two suits involved in this litigation. The suits were consolidated for trial and appeal below and were consolidated for argument in this Court. We are this day rendering a separate opinion in the second suit. See Moreau v. State Farm Mutual Automobile Insurance Company, 311 So.2d 223 (La. 1975).
Robert J. Hebert was a passenger in a 1964 Dodge truck (with trailer) owned and being driven by Bobby Gene Moreau. Hebert was injured and Moreau killed when their vehicle was struck from the rear by one or the other or both of two passenger vehicles driven by Paul R. Green and Joseph Chaisson. Green was insured by Allstate Insurance Company. Chaisson was uninsured. State Farm Automobile Insurance Company had issued several automobile liability insurance policies. Pertinent to this and its companion suit were a liability policy with uninsured motorist coverage on the Moreau truck and policies with uninsured motorist coverages on three other vehicles, none involved in the accident, a 1969 Oldsmobile owned by Moreau, and both a 1963 Chevrolet pickup and 1965 Chevrolet sedan owned by Hebert.
Initially Hebert filed suit for damages against Green, Chaisson and on an alternative allegation that Moreau was at fault, State Farm as Moreau's liability insurer.[1] In the companion suit, Mrs. Beverly Ann Hebert Moreau, widow of Bobby Gene Moreau, filed suit against Green, Allstate and Chaisson.
While both suits were pending, the plaintiffs entered into compromise agreements with Green and Allstate, settling their claims against those defendants, with reservation of their rights against Chaisson and State Farm and voluntarily dismissing their suits with prejudice as to Green and Allstate.
Thereafter, plaintiffs filed amended petitions deleting all claims and allegations as to Green and Allstate and alleging that the accident was caused solely by the negligence of Chaisson, the uninsured motorist.
State Farm then moved for summary judgment in both suits on the ground that the settlements with Green and Allstate without its prior consent had triggered an exclusion clause (with respect to uninsured motorist coverage) in the respective policies.
The trial judge for the 16th Judicial District Court granted the summary judgments and the Third Circuit Court of Appeal with one concurring and one dissenting opinion affirmed. 298 So.2d 914 (La.App.3rd Cir. 1974); see also 298 So.2d 907 (La.App.3rd Cir. 1974), the opinion of the Court of Appeal in the companion suit. We granted writs, 302 So.2d 31 (La.1974), to consider the validity of that exclusion clause.
The exclusion relied upon by State Farm is found in Part IV (Protection Against Uninsured Motorists) of the policies:
"This policy does not apply under Part IV: . . . (b) to bodily injury to an insured with respect to which such insured, *226 his legal representative or any person entitled to payment under this coverage (uninsured motorist coverage) shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;"
In each of the summary judgment motions State Farm alleged that the plaintiffs, without its consent, had entered into a settlement with persons or organizations who may be legally liable for the damages plaintiffs claimed and that each policy contained a clause excluding uninsured motorist coverage when a settlement is entered into without its consent. Based on that exclusion and the failure of the plaintiffs to obtain its consent, State Farm argued that it was relieved of liability.
There is no dispute that State Farm's consent was neither sought nor obtained prior to the settlements reached with Green and Allstate.
Plaintiffs' first argument is that this exclusion by its terms applies only to settlements with the uninsured motorist and not to settlements with liable or possibly liable insured tortfeasors. While the argument is not without some logic, we believe that the clause is too clear to be given that construction ("this policy does not apply ... to bodily injury... with respect to which (the) insured... shall without written consent... make any settlement with any person or organization who may be legally liable therefor;").
Alternatively plaintiffs argue that even if the clause by its terms applies to all settlements including one with an insured tortfeasor, it is only applicable if such tortfeasor is (later shown to be) legally liable and not if such tortfeasor simply may possibly be legally liable. We find no merit in this argument as the provision "may be legally liable" in the clause in our view means just that.
Plaintiffs' final argument, and the one which prompted the issuance of writs in these cases, is that the exclusionary clause, while applicable by its terms, is invalid under the provisions of the pertinent statute, R.S. 22:1406, subd. D. That statute (as it read on the date of the instant accident) requires that, absent rejection by an insured, each automobile liability insurance policy include uninsured motorist coverage in not less than $5000/$10,000 limits.[2] *227 This provision (R.S. 22:1406, subd. D) enunciating the State's public policy as regards the required minimum uninsured motorist coverage limits, has been applied so as to deny effect to other policy provisions which would deny or reduce the mandated coverage.
In Graham v. American Casualty Company, 261 La. 85, 259 So.2d 22 (1972) this Court considered a "pro rata" clause which, if given effect, would have allowed only a total of $5,000 to be recovered (even though actual damages exceeded $5,000) under the uninsured motorist provisions of three independent (and applicable) policies, each providing $5,000 in uninsured motorist coverage. The effect would have been that each policy would have contributed only one-third of $5,000. We held there that the statute did not limit recovery on an uninsured motorist claim to $5,000, but rather that the statute required the $5,000 minimum coverage in each policy issued. Any provision, such as the pro rata clause (as there applied), attempting to reduce the otherwise applicable minimum limit of each policy, we determined could not be given effect.
In Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972) an "excess" provision of an "other insurance" clause precluded total recovery in excess of the highest applicable limit in any of several otherwise applicable policies providing uninsured motorist coverage. Such clause was held to be in violation of the mandate of R.S. 22:1406, subd. D(1) that no policy shall be issued unless coverage is provided therein in not less than the limits described in the Motor Vehicle Safety Responsibility Law. The clause was held to be unenforceable. It was determined that if claimant's injuries warranted, he should be allowed to "stack" the respective sums due under each coverage.
Court of Appeal decisions prompted by Graham and Deane include Smith v. Trinity Universal Insurance Co., 270 So.2d 637 (La.App.2d Cir. 1972), and Elledge v. Warren, 263 So.2d 912 (La.App.3rd Cir.), writs refused ("the judgment is not final") 262 La. 1096, 266 So.2d 223 (1972). In Smith a "reduction clause" reduced the amount received from an insured co-tortfeasor. It was held invalid. In Elledge a provision in the policy attempted to exclude uninsured motorist coverage when an insured is occupying an uninsured automobile owned by the named insured or a relative. That clause too was held invalid.
As the Court of Appeal in Elledge noted, R.S. 22:1406, subd. D is part of every policy of insurance incorporating uninsured motorist coverage, and from that it follows that provisions narrowing the coverage mandated by the statute could not be enforced. "An insurance company may not create irrational and illusory `business interests' and interpose them as a bar to the comprehensive coverage required by our statute." 263 So.2d at 919.
Defendant contends that the "consent to settle" clause involved in this case is a reasonable provision with a legitimate and permissible purpose, legally binding upon the parties. It is argued that this clause does not thwart the mandate of R.S. 22:1406, subd. D(1) as did the stricken clauses in Graham and Deane. Defendant suggests, and the Court of Appeal found, that the clause is akin to those requiring timely reporting of loss, submission of proofs of claim, cooperation with the insurer and timely payment of premiums, as well as to certain other definitions and exclusions (for example, "insured" and "insured vehicle") which in some instances serve to defeat recovery under the uninsured motorist coverage.
*228 In support of the contention that the clause is reasonable and serves a legitimate purpose, defendant argues that one purpose of the clause is to prevent a collusive settlement between its insured and an insured co-tortfeasor; another is to limit an insured's recovery to the actual damage sustained; and finally, to protect the defendant's subrogation rights against both co-tortfeasors (the insured and the uninsured tortfeasor).
In our opinion none of the aforestated purposes, to the extent that they are legally permissible, require for their effectuation that prior to settlement with an insured co-tortfeasor the insured secure the written consent of his uninsured motorist insurance carrier.
With respect to the collusion prevention justification, Sanford v. Richardson, 252 So.2d 922 (La.App.2d Cir. 1971), cited by defendant, did cite collusion prevention as one reason for upholding the application of the consent to settle clause. The case does not support defendant's position, however, for in Sanford the settlement was with the uninsured motorist, not as in this case with an insured co-tortfeasor.[3]
With respect to defendant's contention that it needs a veto power over plaintiffs' attempt to settle with a possibly liable insured motorist to prevent plaintiff from being overcompensated, we do not find such to be a legitimate concern of State Farm. As is explained below in our discussion on the effect of the Green/Allstate restrictive settlement on the liability of the parties (Harvey, etc.), State Farm's liability is not adversely affected by that settlement. Plaintiffs' recovering from Green/Allstate more, or less, than Green's pro rata share of the damages is of no concern to State Farm, so long as State Farm's exposure does not exceed that of Chaisson.
The third asserted purpose of the consent to settle clause is to protect the insurer's subrogation rights.
The uninsured motorist statute, R.S. 22:1406, subd. D, which mandates coverage
"for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." (R.S. 22:1406, subd. D(1),
does not grant the insurer any rights against an insured motorist or his liability insurer. Rather it grants the insurer certain reimbursement rights, once it has made payment against the uninsured motorist. R.S. 22:1406, subd. D(4) provides:
"In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer." (Emphasis provided.)
The "coverage required by this section" refers to the coverage, mandated by subsection 1406, subd. D(1), for bodily injury caused by an uninsured motorist. As it is the delict of the uninsured motorist which triggers the obligation of the insurer, it is clear that the foregoing section *229 grants the insurer a right, whether it may technically be one of subrogation or not, against the uninsured motorist and not against that motorist's insured co-tortfeasor.
State Farm, having no reimbursement (or subrogation) right until it has made payment to Hebert for bodily injury caused by Chaisson, may, however, legitimately complain if it can establish that, assuming the negligence of Chaisson, it has been prejudiced by virtue of plaintiffs' earlier release of Green/Allstate.
There are ultimately four possibilities with respect to the findings of fault. Plaintiff may have been at fault, in which event State Farm may not be cast. The remaining three possibilities have plaintiff free from fault and one or the other or both of the other two motorists at fault. If only the insured motorist, Green, is at fault, then State Farm may not be cast. If only the uninsured motorist. Chaisson, is at fault, then State Farm may be cast under the uninsured motorist coverage and in this circumstance will have no ground to complain of plaintiffs' gratuitous or collateral recovery from Green/Allstate. A gratuity from Green/Allstate will have no effect on either Chaisson's liability, or, correspondingly, State Farm's.
Only in the fourth circumstance, where both the uninsured motorist, Chaisson, and the insured motorist, Green, are at fault, may there be an effect upon State Farm's liability as a result of plaintiff's settlement with Green/Allstate. That settlement would reduce by one-half the damages that plaintiff may recover from Chaisson. Art. 2203; Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App.3rd Cir. 1964). State Farm's liability, being a result of Chaisson's delict, corresponds to the quantum plaintiff is "legally entitled to recover" from Chaisson (within policy limits, of course). Thus, State Farm following plaintiff's settlement with Green/Allstate may not be cast for an amount in excess of Chaisson's reduced liability to plaintiff.
The mandatory uninsured motorist coverage of R.S. 22:1406, subd. D may not be thwarted by policy exclusions serving no legitimate purpose. We discern no possible prejudice to State Farm from plaintiffs' settlement with the insured motorist and find no rational justification for the "consent to settle" clause as applied to this settlement.
Furthermore, we agree with the dissenting judge in the Court of Appeal that
"It is not in the best legal interest of the public to require that legal representatives of parties to these actions first receive consent from their client's own uninsured motorist carrier before settling actions with other parties who may or may not be found ultimately liable for plaintiff's injuries. A well recognized principle of our law is that compromises are to be favored. If a client's interests are to be most favorably promoted through the device of settlement and compromise, the attorney involved cannot afford to operate at the whim, or subject to the direction and consent, of an insurance company's claims representative. This is especially so when the consent (required by the exclusion clause at issue) can be withheld in regard to plaintiff's claims against other parties whose possible liability could only be determined by trial and a consequential adjudication. A just weighing of the factors involved requires that the best interests of the public be protected by assuring that the plaintiffs-insureds be given a fair opportunity to recover by means of litigation, if necessary, the fruits of the coverage for which they have readily paid premiums." 298 So.2d at 913.
The cases upholding the validity of the "consent to settle" clause cited by the defendant, LaBove v. American Employers Insurance Company, 189 So.2d 315 (La.App.3rd Cir. 1966), Conner v. American *230 Employers Insurance Company, 189 So.2d 319 (La.App.3rd Cir. 1966), and Sylvest v. Employers Liability Assurance Corp., 252 So.2d 693 (La.App.1st Cir. 1971), each of them involving settlements with an insured motorist, are overruled to the extent they conflict with this opinion.
For the foregoing reasons the decision of the Court of Appeal is reversed; the summary judgment dismissing plaintiff's law suit is likewise reversed and the case is remanded to the District Court for further proceedings.
Reversed and remanded.
NOTES
[1] Hebert's claim against State Farm as liability insurer of the vehicle involved in the accident was dismissed after State Farm filed a Motion for Summary Judgment, alleging that bodily injury and property damage liability coverage was inapplicable under the policy "while the insured vehicle is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the Company." The propriety of this dismissal is not before us in this appeal.
[2] The statute R.S. 22:1406, subd. D(1), applicable to this case, was enacted by Act 187 of 1962. It provided:

"D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage." (Emphasis provided)
In effect it required that liability insurance policies incorporate $5000/$10,000 limits unless rejected by the insured.
The statute was subsequently amended by Act 137 of 1972 to require the insurer, at the request of the insured, to increase the uninsured motorist coverage to any amount not in excess of the amount of liability insurance limits carried by the insured.
Act 154 of 1974 amended the statute to require automobile liability insurance policies to provide uninsured motorist coverage in not less than the limits of the bodily injury liability provided (rather than the former $5000/$10,000 limits) unless the insured rejects the coverage or selects lower limits.
These last two statutes also further extended the scope of uninsured motorist coverage to include underinsured motor vehicles. Act 137 of 1972 provided that uninsured motorist coverage would be applicable when the liability limits of a torfeasor are less than the limits of an insured claimant's uninsured motorist coverage. Act 154 of 1974 extended the concept of the underinsured motor vehicle to the situation where the liability limits applicable to the insured tortfeasor's vehicle are exceeded by the damages suffered by the insured and/or the passengers in the insured's vehicle. In such case the insured's uninsured motorist coverage would be applicable.
[3] We are considering in this case the validity of the consent to settle clause only when settlement has been with the insured co-tortfeasor, not with the uninsured tortfeasor. Furthermore we are not in this case considering the validity of the clause as it relates to a settlement with an insured tortfeasor who, under Act 137 of 1972 and Act 154 of 1974 (see Footnote 2), may be "uninsured" by virtue of being underinsured.