Roy Paul PEREZ, etc., et al.

v.

FORD MOTOR COMPANY.

Civ. A. No. 68–737.

United States District Court,
E. D. Louisiana.

July 1, 1975.

Harvey J. Lewis, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiffs.

Ben W. Lightfoot, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for Traders & General Ins. Co.

## MEMORANDUM OPINION AND ORDER

BOYLE, District Judge:

We took under submission on May 7, 1975, the plaintiffs' motion for summary judgment declaring them entitled to the sum of $10,000.00 representing part of the proceeds of their compromise settlement of their claims against the defendant, Ford Motor Company. The fund in controversy was initially deposited in the registry of the Court and subsequently, by agreement of the contestants and with approval of the Court, was placed in escrow at interest.

The intervenor, Traders & General Insurance Company (Traders), claims the fund by virtue of an agreement entered into on December 30, 1968 with the plaintiffs under which it paid $10,000.00 to plaintiffs pursuant to the uninsured motorist coverage provided in a Traders policy issued to Freddie Joseph Perez.[1] At that time, plaintiffs and Traders executed a document which provided that plaintiffs granted to Traders "subrogation and assignment" of their rights and claims, up to the amount paid by Traders to plaintiffs, against all others, including Derbes, the uninsured motorist,[2] and Ford Motor Company. The document also provides that the plaintiffs "will reimburse said Traders & General Insurance Company for all payments made by it under the terms of this compromise agreement of settlement"[3] out of recovery from any others.

Plaintiffs rely on *Hebert v. Green,* La., 311 So.2d 223 (1975)[4] wherein the Su-

1. See paragraph 6 of the Pre-Trial Order, Record Document # 44.

2. The parties have stipulated that the accident in suit was proximately caused by the joint and concurring negligence of Derbes, whose car was in collision with the rear of the Perez vehicle, and Ford Motor Company.

3. Although the complaint of intervention states that a copy of the agreement was attached, apparently it was not. A copy was

attached to plaintiffs' memorandum in support of the motion. See Record Document No. 134. We note that the amounts stated therein as having been paid do not equal $10,000.00. However, it is undisputed that $10,000.00 was paid and that the agreement relates to the full $10,000.00.

4. Intervenor argues *Hebert* is inapposite and cites no other authority.

preme Court of Louisiana considered a clause in an insurance policy providing for uninsured motorist coverage which excluded such coverage where the insured or any person entitled to payment under that coverage would, without the written consent of the insurer, make any settlement with anyone who may be legally liable therefor.

The Court in *Hebert,* after reviewing the statutory mandates constituting the state's public policy regarding uninsured motorist coverage and cases in which effect had been denied to other policy provisions which would reduce or deny the mandated coverage, held the "consent to settle clause" may not thwart the uninsured motorist coverage required by LSA–R.S. 22:1406D.

The clear effect of the subrogation agreement here is to deprive plaintiffs of the full recovery they otherwise would .receive under the mandatory uninsured motorist provision in their policy. Traders' right to recoup that payment out of plaintiffs' recovery against any other responsible parties frustrates the legislative aim that carriers be responsible for damages caused to insureds by uninsured motorists; and it does so just as completely and as effectively as the exclusion of responsibility through a "consent to settle" clause, or a "pro rata" clause, or an "excess" provision of an "other insurance" clause, or a "reduction clause", or a provision excluding coverage when an insured is occupying an uninsured automobile owned by the named insured or a relative, all of which have been held invalid. *See Hebert,* supra, at 227. Moreover, the sole justification for Traders' reimbursement would appear to be the possible prejudice to its rights by later settlement of plaintiffs' claim against Ford as a joint tortfeasor. Yet, as the court noted in *Hebert,* the effect of such a settlement under Louisiana law is simply to reduce by one-half the amount of the claim against the unreleased, joint tort-feasor. *Harvey v. Travelers Insurance Co.,* 163 So.2d 915 (La.App.1964); *see Hebert v. Green,* supra, at 229. Here, as in *Hebert,* the insureds' settlement which is the object of the carrier's claim was with a co-tortfeasor. We are in accord with the view in *Hebert* that this effect upon Traders' rights is insufficiently prejudicial to justify frustrating the clear public policy of Louisiana.

Although Traders asserts a contractual right of subrogation which is independent of the uninsured motorist statute, it is worth noting that the statute expressly provides for a carrier's subrogation. *See* LSA–R.S. 22:1406D(4). As interpreted by the Louisiana Supreme Court, however, this subrogation was not intended to apply to recoveries against joint tort-feasors.

> [I]t is clear that the [subrogation] section grants the insurer a right . . . *against the uninsured motorist and not against the motorist's insured co-tort-feasor.*
>
> *Hebert v. Green,* supra, at 228, 229 [emphasis added].

Thus, to the extent Traders' agreement purports to cover claims against both the co-tort-feasor and the uninsured motorist, it is inconsistent with specific legislative intent as well as with the statute's broader expression of public policy.

We have been referred to and are aware of no Louisiana case in which the court dealt with the same or similar facts presented to us. However, considering Justice Calogero's opinion in *Hebert,* we believe that Louisiana, on the basis of *Hebert,* would conclude that the subrogation agreement here cannot be enforced. Accordingly, we determine that the motion for summary judgment should be, and it is hereby, GRANTED.

The result reached above makes it unnecessary to consider plaintiffs' alternative claim for attorney's fees.